# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMAZON.COM, INC.,

      *Plaintiff*,

v.

CONSUMER PRODUCT SAFETY
COMMISSION, *et al.*,

      *Defendants*.

Civil Action No. 8:25-cv-00853-LKG

## AMAZON.COM, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS <u>MOTION FOR SUMMARY JUDGMENT</u>

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.    Amazon Is a Third-Party Logistics Provider, Not a Distributor. ......................... 3

     A.    The Commission's Interpretation of the CPSA Ignores the Statutory Structure and Would Nullify the Third-Party Logistics Provider Exception. .............................. 3

     B.    The Commission's Reading of "Solely" Contravenes the Statutory Text and Fails to Define the Scope of the Third-Party Logistics Provider Definition. .................. 6

II.   The Final Order's Notice Requirements Violate the APA and the First Amendment. ........ 9

     A.    The Notice Requirements Violate the APA. ............................................................. 9

     B.    The Notice Requirements Violate the First Amendment. ..................................... 14

III.  The Final Order's Refund Requirements Exceed the Commission's Authority. .............. 19

     A.    The Act Does Not Authorize the Commission to Order Duplicative Refunds. .... 19

     B.    The Commission Is Not Authorized to Impose Conditions on Refunds ............... 21

IV.   The Commission's Structure Is Unconstitutional. ............................................................ 23

     A.    Vacatur Is the Appropriate Remedy for the CPSA's Unconstitutional Removal Restrictions. ........................................................................................................... 23

     B.    The Combination of Investigatory, Prosecutorial, and Judicial Functions in This Proceeding Violated Amazon's Due Process Rights ............................................. 24

CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Beverage Ass'n v. City & County of San Francisco,*
    916 F.3d 749 (9th Cir. 2019) .................................................................................................19

*Am. Petroleum Inst. v. EPA,*
    661 F.2d 340 (5th Cir. 1981) ................................................................................................11

*Am. Wild Horse Pres. Campaign v. Perdue,*
    873 F.3d 914 (D.C. Cir. 2017) .............................................................................................12

*Am. Hosp. Ass'n v. Azar,*
    983 F.3d 528 (D.C. Cir. 2020) .............................................................................................17

*Am. Meat Inst. v. U.S. Dep't of Agric.,*
    760 F.3d 18 (D.C. Cir. 2014) ...............................................................................................17

*Appalachian Power Co. v. EPA,*
    477 F.2d 495 (4th Cir. 1973) ...............................................................................................11

*Bakalis v. Golembeski,*
    35 F.3d 318 (7th Cir. 1994) .................................................................................................25

*Balt. & Ohio R.R. Co. v. Aberdeen & Rockfish R.R. Co.,*
    393 U.S. 87 (1968) ...............................................................................................................11

*Bhatti v. Fed. Hous. Fin. Agency,*
    97 F.4th 556 (8th Cir. 2024) ................................................................................................24

*Burlington N. & Santa Fe. Ry. Co. v. STB,*
    403 F.3d 771 (D.C. Cir. 2005) .............................................................................................13

*Cal. Chamber of Comm. v. Council for Educ. & Res. on Toxics,*
    29 F.4th 468 (9th Cir. 2022) ................................................................................................19

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
    447 U.S. 557 (1980) ...........................................................................................3, 14, 15, 16, 18

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.,*
    721 F.3d 264 (4th Cir. 2013) ...............................................................................................18

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021) ....................................................................................................23, 24

*Dep't. of Com. v. New York*,
    588 U.S. 752 (2019)....................................................................................20, 21

*Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*,
    707 F.3d 462 (4th Cir. 2013) .................................................................10

*Duncan v. Walker*,
    533 U.S. 167 (2001)...............................................................................5

*Edenfield v. Fane*,
    507 U.S. 761 (1993)...............................................................................14

*Etape v. Chertoff*,
    497 F.3d 379 (4th Cir. 2007) .................................................................6

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)...............................................................................20

*Fla. Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995)...............................................................................16

*Gen. Elec. Co. v. EPA*,
    53 F.3d 1324 (D.C. Cir. 1995).................................................................7

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
    527 U.S. 173 (1999)...............................................................................16

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
    700 F. App'x 251 (4th Cir. 2017) .........................................................17, 18

*Hummel v. Heckler*,
    736 F.2d 91 (3d Cir. 1984).....................................................................25

*K & R Contractors, LLC v. Keene*,
    86 F.4th 135 (4th Cir. 2023) .................................................................24

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024)...........................................................................8

*Marshall v. Cuomo*,
    192 F.3d 473 (4th Cir. 1999) .................................................................25

*Martin v. Hadix*,
    527 U.S. 343 (1999)...............................................................................22

*Md. Shall Issue, Inc., v. Anne Arundel County*,
    91 F.4th 238 (4th Cir. 2024) .................................................................17

*MCI Telecomms. Corp. v. AT&T Co.*,
    512 U.S. 218 (1994) ......................................................................................21

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ........................................................................................19

*Music Choice v. Copyright Royalty Bd.*,
    970 F.3d 418 (D.C. Cir. 2020) ......................................................................11

*Nart v. Open Text Corp.*,
    2013 WL 442009 (W.D. Tex. Feb. 5, 2013) .................................................11

*Nat'l Ass'n of Mfrs. v. SEC*,
    800 F.3d 518 (D.C. Cir. 2015) ................................................................16, 17

*NIFLA v. Becerra*,
    585 U.S. 755 (2018) ......................................................................................19

*North Carolina v. United States*,
    7 F.4th 160 (4th Cir. 2021) .............................................................................8

*Ohio Valley Env't Coal. v. Aracoma Coal Co.*,
    556 F.3d 177 (4th Cir. 2009) .........................................................................13

*Pagan v. Fruchey*,
    492 F.3d 766 (6th Cir. 2007) .........................................................................14

*Roberts v. Sea-Land Servs., Inc.*,
    566 U.S. 93 (2012) ..........................................................................................4

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ................................................................................14, 15

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ...........................................................................7, 10, 20

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002) ......................................................................................16

*United States v. Edge Broad. Co.*,
    509 U.S. 418 (1993) ......................................................................................14

*United States v. Philip Morris*,
    855 F.3d 321 (D.C. Cir. 2017) ......................................................................17

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ........................................................................................7

*Withrow v. Larkin*,
    421 U.S. 35 (1975)......................................................................................24

*Zauderer v. Office of Disciplinary Couns.*,
    471 U.S. 626 (1985)...............................................................3, 16, 17, 18, 19

**Statutes**

5 U.S.C. § 706 ...............................................................................................8

15 U.S.C. § 2051 ..........................................................................................13

15 U.S.C. §§ 2051–2090.............................................................................4, 20

15 U.S.C. § 2052 ................................................................................. *passim*

15 U.S.C. § 2064 ................................................................................. *passim*

15 U.S.C. § 2066 ..........................................................................................22

**Regulations**

16 C.F.R. § 1115.23 ...............................................................................10, 21

16 C.F.R. § 1115.26 ...............................................................................12, 14

16 C.F.R. § 1115.27 ...............................................................................12, 20

16 C.F.R. § 1115.29 ......................................................................................10

**Other Authorities**

75 Fed. Reg. 3,355 (Jan. 21, 2010) .............................................................10

78 Fed. Reg. 69793 (Nov. 21, 2013)............................................................13

CPSC, Future Motion Recalls Onewheel Self-Balancing Electric Skateboards Due
    to Crash Hazard; Four Deaths Reported (Sept. 29, 2023) .......................20

CPSC, Target Recalls Children's Pillowfort Weighted Blankets Due to
    Asphyxiation Hazard; Two Fatalities Reported (Dec. 22, 2022)..............20

*Disclosure*, *Black's Law Dictionary* (12th ed. 2024) .................................18

## INTRODUCTION

When the Consumer Product Safety Commission ("CPSC" or "Commission") notified Amazon in 2020 and 2021 that it had concerns regarding certain products sold by third parties on Amazon.com, Amazon promptly took action to protect consumers. Amazon immediately removed the relevant product listings, quarantined all units stored in its fulfillment centers, notified every purchaser of the safety risks, and provided each of them a full refund. Despite those responses, the Commission sought to mandate additional measures through a recall proceeding. The Commission made no meaningful effort to show that these further measures—consisting of duplicative consumer notices and refunds, issued years after the sales occurred—would enhance consumer safety. Instead, the Commission treated the proceeding as an opportunity to stretch the agency's authority over online marketplaces beyond the bounds established by the Consumer Product Safety Act ("CPSA" or "Act"). Whatever the merits of the Commission's policy objective, the decision whether to update the CPSA belongs to Congress, not the Commission.

The Commission's brief doubles down on the Final Order's flawed approach. It insists, contrary to binding precedent, that the Final Order need not be supported by evidence so long as the Commission cites its own experience. The brief also relies on new rationales, not expressed in the Final Order, despite Supreme Court caselaw prohibiting that practice. Rather than addressing the conflicts between the Final Order and dozens of prior recall actions, the Commission improperly dismisses its own precedent. And the Commission advances arguments that would nullify both the 2008 CPSA amendments enacted by Congress and bedrock constitutional protections. The Commission's regulatory authority is subject to limits prescribed by the CPSA, the Administrative Procedure Act ("APA"), and the Constitution. The Court should set aside the Final Order because it transgresses those limits.

First, Amazon is a third-party logistics provider rather than a distributor of the hair dryers, sleepwear, and carbon monoxide detectors ("Subject Products") at issue in this proceeding. Consequently, it is not the proper party to conduct a recall of those products. To support its contrary conclusion, the Commission asserts that an entity can qualify as both a third-party logistics provider *and* a distributor. But that reading contradicts the structure of the CPSA, in which the term "third-party logistics provider" functions as a carveout to the distributor classification. The Commission also interprets "third-party logistics provider" in a way that contravenes the statute and renders the relevant CPSA provision unworkable in practice.

The duplicative notices and refunds ordered by the Commission are likewise impermissible. The Commission concedes that Amazon promptly notified and refunded purchasers, long before the Commission completed its lengthy enforcement process. But the Commission dismisses these voluntary steps, arguing that Amazon should not have acted until directed by the agency. Under that rigid approach, consumers would have to wait years to receive safety notices and refunds—in direct contravention of the CPSA's purposes. And while the Commission denigrates Amazon's response as "sen[ding] purchasers a message" and "provid[ing] a store credit," these are exactly the steps contemplated by the statute, permitted in other recall matters, and that the Commission wants Amazon to take again now.

Just as it downplays Amazon's prior actions, the Commission overplays its justifications for forcing Amazon to issue duplicative notices. The Commission asserts that it can rely on its "experience" in lieu of evidence to justify a new round of consumer notices. But the APA requires actual evidence to justify regulatory action; administrative *ipse dixits* do not suffice.

The Commission likewise errs regarding Amazon's First Amendment challenge to the Final Order's compelled statements. Contrary to the Commission's arguments, that challenge is

governed by the *Central Hudson* test because the more relaxed *Zauderer* standard is limited to advertising and point-of-sale disclosures, and the notices mandated here are neither disclosures nor at the point of sale.  And under *Central Hudson*, the Commission has not demonstrated—and cannot demonstrate—that its notice order "directly advances" a substantial governmental interest and is "not more extensive than is necessary."  Even under *Zauderer*, the notice order fails because it is "unjustified" and "unduly burdensome."

The Commission similarly ignores the CPSA's limits on its remedial authority.  The Commission's assertion that it can order duplicative refunds conflicts with the plain text of the Act, which only authorizes a refund of "the purchase price."  And the Commission's claim that Amazon's prior refunds do not qualify as such because they were issued in the form of store credit, rather than cash, has no basis in the statutory text and contradicts the Commission's past practices.

Finally, as to Amazon's claims regarding the Commission's unconstitutional structure, the Commission misstates the legal standards and dismisses the evidence of harm to Amazon.

## ARGUMENT

## I.    Amazon Is a Third-Party Logistics Provider, Not a Distributor.

Although the CPSA authorizes the Commission to regulate "distributors," Congress amended the Act to specify that a "third-party logistics provider" is not a "distributor" subject to the Commission's recall authority.  Amazon is a third-party logistics provider with respect to the Subject Products, *see* Plaintiff's Memorandum, ECF 22-1 ("Pl. Mem."), 13–20, and the Commission's arguments to the contrary conflict with the text, structure, and purpose of the Act.

### A.    The Commission's Interpretation of the CPSA Ignores the Statutory Structure and Would Nullify the Third-Party Logistics Provider Exception.

The Commission asserts that Amazon is a distributor of the Subject Products because it held the Subject Products for sale or distribution—one of the three types of "distribution in

commerce" covered by the CPSA.  Defendants' Memorandum, ECF 24-1 ("Def. Mem."), 14–15 (citing 15 U.S.C. § 2052(a)(7)).  But that approach incorrectly focuses on the distributor definition in isolation.  The Act's reference to "distribution in commerce," which describes the activities of a "distributor" subject to Commission authority, must be read together with its "third-party logistics provider" provision, which exempts entities conducting certain distribution activities from the CPSC's regulatory reach.

Under the CPSA, a firm that "*hold[s]* [a product] for sale or distribution" is a distributor *unless* it "solely receives, *holds*, or otherwise transports [the] consumer product in the ordinary course of business but . . . does not take title to the product," in which case it is a third-party logistics provider.  15 U.S.C. § 2052(a)(7), (16) (emphases added).  The Commission's attempt to read these terms "in a vacuum" and without regard to "their place in the overall statutory scheme" conflicts with core principles of statutory interpretation.  *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012).  Because Amazon received, held, and transported the Subject Products without taking title to them, it is a third-party logistics provider, not a distributor, of the Subject Products.

The Commission seeks to avoid that conclusion by arguing that a party could qualify as both a third-party logistics provider *and* a distributor.  Def. Mem. 21.  But that argument contravenes the CPSA's structure and purposes as well.  In 2008, Congress amended the CPSA to add the term "third-party logistics provider" and to clarify that third-party logistics providers, like common carriers, contract carriers, and freight forwarders (who were already exempted), "shall not . . . be deemed to be a manufacturer, distributor, or retailer . . . solely by reason of receiving or transporting a consumer product."  15 U.S.C. § 2052(a)(16), (b).  The term "third-party logistics provider" does not appear anywhere in the CPSA except in this carveout to the distributor definition.  *See* 15 U.S.C. §§ 2051–2090.  If the Commission were correct that a party who

qualifies as a third-party logistics provider of certain products could also be a distributor of those products, the third-party logistics provider exemption would be rendered "wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 174 (2001).[1]

The Commission equally misses the mark in contending that a third-party logistics provider could qualify as a distributor because the third-party logistics provider definition refers to "holding," whereas the distributor exception at 15 U.S.C. § 2052(b) refers only to "receiving" and "transporting." Def. Mem. 20–21. Congress defined a "third-party logistics provider" as an entity that "receives, holds, or *otherwise* transports." 15 U.S.C. § 2052(a)(16) (emphasis added). The use of the word "otherwise" suggests that Congress viewed "holding" as a subset of "transporting," and thus did not need to add the term "holds" to the distributor exception to encompass third-party logistics providers. Moreover, to read that exception as excluding third-party logistics providers that "hold" products would functionally read that word out of the statute, because the classification of such entities as third-party logistics providers would serve no purpose. Interpreting that provision to include only entities that receive and instantaneously transport products would also render the exception essentially meaningless in practice. The Commission thus proposes a reading of distribution that would swallow the exception created by Congress.

Recognizing the absurdity of this position, the Commission concedes that "keeping products in storage does not disqualify a firm from being covered by the exception," but maintains that Amazon does not qualify because it holds products "for sale or distribution," rather than simply for "transporting." Def. Mem. 22. The statutory text is to the contrary. Unlike the

---

[1] The Commission draws a negative inference from the carveouts for manufacturers and retailers, but not third-party logistics providers, in the distributor definition. Def. Mem. 21 (citing 15 U.S.C. § 2052(a)(8)). But that language serves a different function: by stating that a distributor "does not include a manufacturer or retailer," 15 U.S.C. § 2052(a)(8), Congress clarified that a distributor will not face the obligations of these other types of regulated entities.

distribution in commerce definition, which refers to "hold[ing] for distribution or sale," the third-party logistics provider definition refers only to "hold[ing]."  If Congress intended to limit third-party logistics providers to those who hold for transportation, it would have done so, just like it limited the distribution in commerce definition.

Indeed, the Commission's interpretation would render the entire distributor exception "meaningless."  *Etape v. Chertoff*, 497 F.3d 379, 384 (4th Cir. 2007).  As the Commission concedes, Congress added this provision to prevent the CPSA's broad distributor definition from capturing entities like contract carriers, common carriers, third party logistics providers, and freight forwarders.  Def. Mem. 16.  Because these entities do not "sell in commerce" or "introduce or deliver for introduction into commerce," they would only qualify as distributors because they "hold for sale or distribution after introduction into commerce"—the category of "distribution" that the Commission claims encompasses Amazon here.  15 U.S.C. § 2052(7).  But according to the Commission, holding products for "distribution," rather than for "transporting," disqualifies an entity from the distributor exception.  If that were the case, there would be no reason to include the exception in the statute, because it would apply only to entities that do not otherwise fall within the distributor definition.  In other words, entities like contract carriers only need the exemption from distributor status because they "hold" consumer products "for sale or distribution," so an interpretation that holding consumer products for sale or distribution renders an entity ineligible for that exemption is self-defeating.

## B.    The Commission's Reading of "Solely" Contravenes the Statutory Text and Fails to Define the Scope of the Third-Party Logistics Provider Definition.

The Commission argues that Amazon is not a third-party logistics provider because its activities with respect to the Subject Products went beyond "solely receiv[ing], hold[ing], or

otherwise transport[ing]."  Def. Mem. 17.  The Commission's reading of the statute is both contradicted by the statutory text and unworkable in practice.

The Commission asserts that parties can engage in activities that are "ancillary" to receiving, holding, or transporting and still qualify as having "solely" received, held, and transported.  But the word "ancillary" does not appear in the Act.  The Commission also introduces a second extratextual exception to "solely" that was not included in the Final Order:  that it "does not restrict a firm's activities unrelated to the consumer product[s] at issue."  Def. Mem. 19.  This new rationale is not properly before the Court because it is not a ground on which the Final Order "was based."  *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).  In any event, both arguments fail because an "agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate."  *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014).

The Commission's approach would also render the third-party logistics provider definition unworkable in practice.  The Commission does not define the term "ancillary" and claims that it is not necessary to do so because "Amazon does considerably more."  Def. Mem. 19–20.  This is nothing more than an impermissible "we know it when we see it" approach.  The Commission likewise fails to define when an activity is "unrelated" to the product at issue.  Although the Commission refers to "general operational tasks" as an example, Def. Mem. 19, many operational tasks are "related" in some sense to consumer products (e.g., running a warehouse that stores products or billing for services related to those products).  Such vague, undefined exceptions do not give regulated parties the guidance that they require to comply with the law.  *Cf. Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) ("[A] regulated party acting in good faith [must] be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform.").

The Commission incorrectly asserts that the Court need not determine the full scope of the statute to uphold the Final Order's determination that Amazon is a distributor.  Def. Mem. 20.  The Court's role is to "exercise independent judgment in determining the meaning of statutory provisions," without deference to the agency's interpretation, and to set aside the Final Order if it is based on an interpretation that is contrary to law.  *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261–62 (2024).  Here, the Commission's determination that Amazon is not a third-party logistics provider is based on an interpretation of "solely" that is contrary to law.  The Court cannot simply take the Commission's word that whatever "solely" means, Amazon's activities fall outside the scope of that term.[2]

Rather than adopting the Commission's flawed interpretation of "solely," the Court should construe that term as referring to "sole distribution activities."  That is, an entity solely receives, holds, and transports products if it does not engage in other distribution activities with respect to those products as defined by the Act—i.e., selling in commerce or introducing or delivering for introduction into commerce.  This reading accords with the third-party logistics provider provision's exclusive role in the CPSA as a carveout to the distributor definition.  *See supra*, at 4. The Commission dismisses this reading by noting that the third-party logistics provider definition does not mention "distributor" or "distribution in commerce," but this neglects the definition's role in the Act's structure.  The Commission also argues that under Amazon's reading, a manufacturer would qualify as a third-party logistics provider because manufacturing is not a "distribution"

---

[2] *North Carolina v. United States*, 7 F.4th 160 (4th Cir. 2021), is inapposite.  That non-APA case concerned whether the United States was entitled to sovereign immunity.  In assessing that issue, the court saw no need to determine the "precise scope" of one provision that purported to waive sovereign immunity because a second provision clearly did so and was thus dispositive. *Id.* at 167. Here, by contrast, the Court must determine whether the Commission's interpretation of one specific section of the statute is "contrary to law."  5 U.S.C. § 706(2).

activity.  Def. Mem. 18.  But this ignores the third-party logistics provider definition's exclusion of those who, like manufacturers, "take title to the product."  15 U.S.C. § 2052(a)(16).

Indeed, by defining a third-party logistics provider as one "who does not take title to the product," Congress distinguished third-party logistics providers from those who engage in other distribution activities that involve taking title (e.g., selling in commerce).  Congress used the coordinating conjunction "but" to highlight the contrast between two different types of distribution activities—receiving, holding, and transporting on the one hand, and taking title (which can transform an entity into a seller) on the other.  *Id.*  That usage reinforces that "solely" logically means "sole distribution activities."  The Commission not only overlooks this "title" aspect of the third-party logistics provider definition, but also downplays the common law precedent that Amazon is not a distributor of products to which it does not take title.  *See* Pl. Mem. 16.

Amazon provided logistics services to brand owners and other retailers. Those services involved storing and then conveying products for delivery.  Because Amazon did not take title to the Subject Products and did not engage in any distribution activities beyond holding the products for distribution in commerce, Amazon was a third-party logistics provider, not a distributor, with respect to the Subject Products.

## II.    The Final Order's Notice Requirements Violate the APA and the First Amendment.

### A.    The Notice Requirements Violate the APA.

The Final Order's notice requirements exceed the Commission's statutory authority and are arbitrary and capricious under the APA.  Pl. Mem. 21–27.  The Commission's assertion that the Final Order "complied with the CPSA to a tee," Def. Mem. 24, in mandating that Amazon issue

additional notice to consumers—consisting of public notice on Amazon.com, as well as two forms of direct notice to purchasers[3]—is belied by the Act and the administrative record.

Under the CPSA, the Commission may not order a recalling party (here, Amazon) to issue notice to consumers unless it determines that the notice is "required in order to adequately protect the public." 15 U.S.C. § 2064(c)(1).[4] The Final Order failed to carry this statutory burden. Additional notice is not required here because Amazon proactively issued two forms of direct notice promptly after learning of the Commission's safety concerns. The notice provided by Amazon "effectively help[ed]" purchasers of the Subject Products—100% of whom were sent the direct notices, AR10225–26—(1) identify the Subject Products; (2) understand the potential hazard; and (3) obtain the available remedies, 16 C.F.R. § 1115.23(b). *See* Pl. Mem. 22–23.

The Commission's flyspecking of Amazon's notices ignores key aspects of the record.[5]

---

[3] In addition, the Final Order requires Amazon to issue one round of notices to the third parties "that sold the Subject Products." AR17723.

[4] The Commission incorrectly asserts (at 24 n.10) that Section 15(d)(1) provides an "independent basis" of statutory authority for its notice order. Section 15(d)(1) provides that the Commission may, upon identifying a substantial product hazard, "order the manufacturer or any distributor or retailer of such product to provide the notice required by subsection (c)." 15 U.S.C. § 2064(d). The provision thus refers back to the agency's authority under Section 15(c), rather than providing an independent source of power. Further, the Commission cannot now rely on Section 15(d) to justify its notice order because the Final Order did not do so. *See Chenery*, 318 U.S. at 87.

[5] The Commission insists (at 28) that it need not determine whether the default components listed in Section 15(i) of the Act are "unnecessary or inappropriate." But as the Final Order itself recognizes, "in Section 15(i), Congress authorized the Commission to determine the information that should appear in Section 15(c) notices[.]" AR17386; *see also* Guidelines and Requirements for Mandatory Recall Notices, 75 Fed. Reg. 3,355 (Jan. 21, 2010) (recall notices "should be tailored to the specific product and circumstances"). Thus, the Commission must evaluate whether the components listed in Section 15(i) are "not required." 16 C.F.R. § 1115.29(b). Further, because Amazon has challenged the Commission's insistence on the application of these default components, *see* AR17243, it "surely was required to cogently explain why it had exercised its discretion" in this manner, *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 473 (4th Cir. 2013) (cleaned up). The Commission failed to do so. *See* Pl. Mem. 24.

*First*, the Commission's criticism (at 25) that "Amazon messaged only the initial purchasers" of the Subject Products ignores that Amazon's notices clearly instructed purchasers to contact any other persons who may have received the Subject Products. *See* AR10165–67, 10184–85, 10196–97, 10207–08, 10218–19, 10259–60. Furthermore, the Commission provides no evidence that the Subject Products are now owned and used by individuals other than the initial purchasers. Although the Commission asserts (at 25) that it is "entitled to rely on its knowledge and experience," precedent is to the contrary. Because "[t]he requirement for administrative decisions based on substantial evidence and reasoned findings . . . would become lost in the haze of so-called [administrative] expertise," *Balt. & Ohio R.R. Co. v. Aberdeen & Rockfish R.R. Co.*, 393 U.S. 87, 92 (1968), agency action must be supported by concrete evidence, and "an agency's *ipse dixit* cannot substitute for reasoned decisionmaking" under the APA, *Music Choice v. Copyright Royalty Bd.*, 970 F.3d 418, 429 (D.C. Cir. 2020); *see also Appalachian Power Co. v. EPA*, 477 F.2d 495, 507 (4th Cir. 1973), *overruled on other grounds by Union Elec. Co. v. EPA*, 427 U.S. 246, 296 (1976); *Am. Petroleum Inst. v. EPA*, 661 F.2d 340, 349 (5th Cir. 1981) (judicial review "must be based on something more than trust and faith in [the agency's] experience").

*Second*, the Commission complains that Amazon did not track whether every single purchaser read the notices. Def. Mem. 24–25. This is a red herring because there is no statutory requirement that firms track whether recall emails are opened by consumers, nor is this a standard recall practice. *See* AR3353; AR4321. Moreover, courts routinely hold that where, as here, it is undisputed that emails were sent by a party, it is the opposing party's burden to prove that the emails were not read. *See, e.g.*, *Nart v. Open Text Corp.*, 2013 WL 442009, at *2 n.4 (W.D. Tex. Feb. 5, 2013) (collecting cases). The Commission has not met that burden here.

The Commission also quibbles with the wording used in Amazon's notices, pointing out that they did not include the term "recall" and described "potential" hazards associated with the Subject Products.  Def. Mem. 26.  Neither argument withstands scrutiny.  As to the former, the CPSA does not require recall notices to include the word "recall," *see* 15 U.S.C. § 2064, and the Commission's own recall guidelines provide that "[a] direct recall notice" may include "'Safety Recall' *or other appropriate terms* in an electronic mail subject line."  16 C.F.R. § 1115.26(b)(2) (emphasis added).  Amazon's notices, which featured "Important Safety Notice" in their subject lines, satisfied this guideline.    AR10165–67, 10184–85, 10196–97, 10207–08, 10218–19, 10259–60.  Regarding Amazon's description of the product hazards, the CPSA does not require "a description of the product's 'actual' hazards."  Def. Mem. 26.  Instead, the relevant regulation states that recall notices should include "a clear and concise description of the product's actual *or potential* hazards."  16 C.F.R. § 1115.27(f) (emphasis added).

*Third*, the Commission incorrectly asserts (at 27) that Amazon's notices lacked "required information," such as photographs of the Subject Products.  The Commission has not meaningfully considered whether such components are indeed "required."  *See supra* note 5.  In any event, Amazon's notices included a hyperlink that redirected purchasers to an Amazon.com webpage where they could view a photo of the Subject Product they purchased along with other identifying information.  The Commission does not explain how this form of notice is deficient.

The Commission also cannot square the inconsistency between its disapproval of Amazon's prior notices and its approval of substantially similar notices in other recall matters. The Commission needed, at a minimum, to "offer a reasoned explanation" for these inconsistencies.  *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017). Courts have a corresponding duty to "engage in a searching and careful inquiry of the record" to

confirm that the agency discharged this obligation. *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (quotation omitted).

In arguing that prior Commission-approved notices were "materially different from Amazon's messages to consumers," the Commission glosses over past Commission-approved notices that use "conditional phrasing" to describe the hazards posed by consumer products[6] and that do not warn of a risk of death.[7]    The Commission's attempt to distinguish these examples by characterizing mandatory recall notices as "sufficiently different" from voluntary notices fails. Def. Mem. 29–30.    The Act's purpose is to "protect the public," 15 U.S.C. § 2051(b)(1), and the public's entitlement to such protection is not dictated by whether recalls are voluntary or mandatory.    Indeed, "whether a product hazard is addressed in the context of a mandatory recall or a voluntary recall, the need to inform and encourage affected consumers to act is similar." Voluntary Remedial Actions and Guidelines for Voluntary Recall Notices, 78 Fed. Reg. 69793, 69794 (Nov. 21, 2013).    The presence or absence of litigation therefore does not explain why addressing the hazards posed by the Subject Products "merit[s] [a] different approach[]" than that taken by the Commission with respect to similar products posing similar hazards.  Def. Mem. 30. "Where," as here, "an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Burlington N. & Santa Fe. Ry. Co. v. STB*, 403 F.3d 771, 777 (D.C. Cir. 2005).

---

[6] *See, e.g.*, AR10255; AR4259 ("Vibration from the ignition module may cause the trimmer head to loosen and detach."); AR4265 ("master cylinder may cause unintended brake drag"); AR4275 ("Burners on [r]ange tops operating on liquefied petroleum . . . may fail to ignite or light.").

[7] *See, e.g.,* AR11890; AR11917–19.

**B.    The Notice Requirements Violate the First Amendment.**

The Final Order compels Amazon's speech by requiring it to issue duplicative notices dictated by the Commission, years after the Subject Products were last sold on Amazon.com.  That mandate comports with the First Amendment only if it "directly advances" a substantial government interest and is "not more extensive than is necessary to serve that interest."  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564, 566 (1980).  Because the Commission has not made either showing, the notice mandate is unlawful.  *See* Pl. Mem. 27–33.

The Commission contends that it "was entitled to rely on its knowledge and experience regulating consumer products and was not required to adduce evidence" to support its notice requirements.  Def. Mem. 25.[8]  But "knowledge and experience" alone cannot satisfy the Commission's burden to demonstrate that the notices will advance its asserted interest in a "direct and material way."  *Edenfield v. Fane*, 507 U.S. 761, 771 (1993); *see Pagan v. Fruchey*, 492 F.3d 766, 774 (6th Cir. 2007) ("*Edenfield* requires *some* evidence to establish that a speech regulation addresses actual harms with some basis in fact.").[9]  The Commission claims that public notice is necessary to inform secondary purchasers but offers nothing beyond speculation based on "experience" that such purchasers exist.  *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487

---

[8] The CPSC also fails to grapple with the expert opinion of a former CPSC commissioner that consumers would not benefit from additional notices, instead misleadingly couching that opinion as "baseless speculation" as compared to the Commission's "factual determination."  Def. Mem. 34.  But if a former commissioner's experience-based opinion constitutes "baseless speculation," then so does the Commission's experience-based opinion that additional notice is necessary.

[9] The Commission sidesteps the "directly advance" prong of the *Central Hudson* test by arguing that the notice mandate's "application to" Amazon is properly evaluated under the "more extensive than necessary" prong.  Def. Mem. 34, 36 (citing *United States v. Edge Broad. Co.*, 509 U.S. 418, 427 (1993)).  But *Edge Broadcasting* is distinguishable.  There, the Court considered a regulation's effect on the broader public (rather than just the plaintiff) under the "directly advance" prong because the regulation was a broadly applicable statute rather than an order directed to a specific party.  Regardless, for the same reasons that the Final Order's notice mandate does not "directly advance" the CPSA's goals, it is also "more extensive than is necessary to serve" those goals.

(1995) (government cannot satisfy its burden "by mere speculation or conjecture").  And the Commission ignores its own regulations, which state that direct notices to purchasers, like those that Amazon issued, are "the most effective form of a recall notice."  16 C.F.R. § 1115.26(a)(4).

Although Amazon's notices told consumers to dispose of the Subject Products, the Commission asserts (at 36) that Amazon had to go further by instructing consumers to provide proof of destruction or return the Subject Products.  That argument fails twice over.  To start, the CPSA does not require notices to contain the language demanded by the Commission.  *See supra* note 5.  Regardless, a former CPSC commissioner explained that "[a]ny potential hazard [was] sufficiently mitigated by Amazon's safety message to consumers to immediately dispose of the products."  AR3452.  The Commission has not put forward any evidence to the contrary.  Moreover, the Commission's own Section 15 Defect Investigation Procedures Manual states that corrective actions, such as compelled public notice, are unnecessary where a company voluntarily addresses a safety risk, as Amazon did here.  AR3442.

Nor can additional notice be justified solely because Amazon's notices did not use the precise language preferred by the Commission.  *Contra* Def. Mem. 36.  As noted above, the Commission has approved similar language in other recall proceedings.  The Commission cannot compel speech based on its *ipse dixit* assertion that Amazon's messages were "not sufficient to achieve the purposes of a recall," AR17713, especially when that language has been sufficient in substantially similar cases, *see* Pl. Mem. 29–30.

Similarly, the Commission has not shown that the notice mandate is "not more extensive than is necessary."  *Cent. Hudson*, 447 U.S. at 566.  The Commission misapprehends the tightness of the required "fit" between the notice mandate and the government's interests.  Although the "least restrictive means" test does not apply to commercial speech, the government is still required

to consider "less-burdensome alternatives." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995). A commercial speech regulation must be "a necessary as opposed to merely convenient means of achieving [the government's] interests" because "regulating speech must be a last—not first—resort." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). The Commission must also show that the ordered notice is "narrow[ly] tailor[ed] . . . to the asserted interest," and that it "carefully calculated the costs and benefits associated with the burden on speech." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999).

The Final Order's notice mandate fails to clear that bar. The Final Order does not explain why posting public notice on the Commission's website would be insufficient to notify the public, asserting only that Amazon must also post notice on its own website to ensure "wide dissemination." Def. Mem. 37. This falls far short of demonstrating that the ordered notice is "narrow[ly] tailor[ed] . . . to the asserted interest" or that less burdensome alternatives would fail to achieve the government's interests. *Greater New Orleans*, 527 U.S. at 188. Nor does the Commission demonstrate why compelling Amazon to issue new notices with the Commission's chosen language is "necessary" given the similarity between Amazon's notices and prior Commission-approved notices. *Thompson*, 535 U.S. at 373. Thus, even if the Commission had authority to order further notices, it nevertheless erred in crafting the Final Order's requirements.

Recognizing the difficulty of satisfying the *Central Hudson* test, the Commission argues that the Court should apply the less demanding standard from *Zauderer v. Office of Disciplinary Couns.*, 471 U.S. 626 (1985). But *Zauderer*'s reach is limited to advertising and point-of-sale disclosures. While the Commission maintains (at 32) that Amazon has not cited any "case affirmatively cabining *Zauderer* to the point-of-sale context," Amazon's opening brief cited *National Ass'n of Manufacturers v. SEC*, 800 F.3d 518 (D.C. Cir. 2015) ("*NAM*"), which held that

*Zauderer* applies only to "advertising or product labeling at the point of sale," *id.* at 522.[10] As the

D.C. Circuit explained in *NAM*, *Zauderer* "explicitly identified advertising as the reach of its

holding no less than thirteen times." *Id.* Critically, *NAM* also rejected the Commission's argument

that *Zauderer* applies "any time a government forces a commercial entity to state a message of the

government's devising." *Id.*

The Commission invokes two Fourth Circuit cases, arguing that they call for application

of *Zauderer* here, but neither is on point. Relying on *Maryland Shall Issue, Inc., v. Anne Arundel

County*, 91 F.4th 238 (4th Cir. 2024), the Commission argues that *Zauderer* is not limited to speech

that "propos[es] a commercial transaction." Def. Mem. 33. But this is a strawman: Amazon does

not argue that *Zauderer* is limited to speech proposing a commercial transaction (i.e., advertising),

but rather that *Zauderer* is limited to advertising *and* point-of-sale disclosures. Nothing in

*Maryland Shall Issue*, which involved point-of-sale disclosures, suggests that *Zauderer* extends

beyond that context; indeed, the Fourth Circuit explained that *Zauderer* applies to speech

"connected with the sale of a good or a service." 91 F.4th at 248.

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251 (4th

Cir. 2017), is similarly inapposite. *Handsome Brook* involved an order to a nonprofit to retract

*misleading* speech about an egg manufacturer. *See id.* at 252–53. And the key case relied upon

by *Handsome Brook* expressly cabins the applicability of *Zauderer* to "disclosure requirements

---

[10] *NAM* noted that applications of *Zauderer* to other types of point-of-sale disclosures are an "anomaly" introduced by *American Meat Institute v. U.S. Department of Agriculture*, 760 F.3d 18 (D.C. Cir. 2014). But neither case suggests that *Zauderer* applies to compelled statements beyond the point-of-sale context. And while *American Hospital Association v. Azar*, 983 F.3d 528 (D.C. Cir. 2020) ("*AHA*"), suggested in dicta that *Zauderer* extends beyond "advertising and point-of-sale labeling," *id.* at 541, the sole example it relied upon does not support that assertion. *AHA* noted (at 541) that *United States v. Philip Morris*, 855 F.3d 321 (D.C. Cir. 2017), applied *Zauderer* "to court-mandated disclosures," but overlooked the fact that *Philip Morris* deviated from *NAM* based solely on law-of-the-case grounds inapplicable to other cases, *see id.* at 327–28.

aimed at misleading commercial speech," while noting that non-misleading commercial speech is governed by *Central Hudson*. *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 283 n.8 (4th Cir. 2013); *see also NAM*, 800 F.3d at 519 n.3 (when a compelled disclosure is not targeted at "inherently misleading" speech, *Central Hudson*, rather than *Zauderer*, applies). *Handsome Brook* is thus distinguishable from this case, where the Commission is not asserting that notice is required to retract *misleading* speech about another entity's conduct.

The Commission's justifications for imposing a lower First Amendment standard here are also unavailing. The Commission contends that Amazon could "contextualize all around the recall notices just as with point-of-sale disclosures." Def. Mem. 33. But the Final Order prohibited Amazon from providing such context. AR17693 (prohibiting Amazon from including additional language regarding the role of third-party sellers). And while the notices in *Zauderer* informed purchasers about available services, the notices compelled by the Final Order would not serve such a purpose because the Subject Products have been unavailable for years.

Moreover, the notices mandated here are not "disclosures" as that term is used in *Zauderer*. "Disclosure" means to make "known something that was previously unknown."[11] Consistent with this definition, *Zauderer* used "disclosure" to describe information omitted from advertisements, emphasizing that advertisers had a "minimal" interest in "*not* providing" such information. 471 U.S. at 651. Here, the Commission is not directing Amazon to disclose hidden information; rather, it wants Amazon to reissue information that it shared with purchasers years ago. Thus, the compelled speech at issue here differs from the "disclosures" governed by *Zauderer*.

Even if *Zauderer* applies, the Commission failed to meet its burden of showing that the notices are not "unjustified or unduly burdensome." *Id.* Courts have invalidated speech mandates

---

[11] *Disclosure*, *Black's Law Dictionary* (12th ed. 2024).

under *Zauderer* where the mandates are designed to address "purely hypothetical" risks, like the purported risk to secondary purchasers here. *NIFLA v. Becerra*, 585 U.S. 755, 776 (2018). Courts have also rejected safety warnings under *Zauderer* where a less burdensome requirement "would accomplish [the government's] stated goals." *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019). As noted, the Commission failed to establish why posting notice on its own website would fail to accomplish its purported safety goals. Finally, courts have held that compelled safety warnings violate the First Amendment where, as here, the government prevents a company from "add[ing] information to the required warning at their discretion" to mitigate the warning's damage to the company's "reputation and goodwill." *Cal. Chamber of Comm. v. Council for Educ. & Res. on Toxics*, 29 F.4th 468, 479 (9th Cir. 2022).

### III.    The Final Order's Refund Requirements Exceed the Commission's Authority.

#### A.    The Act Does Not Authorize the Commission to Order Duplicative Refunds.

The Final Order improperly requires Amazon to provide purchasers of the Subject Products a second refund, on top of the full refund Amazon issued years ago. That directive exceeds the Commission's statutory authority. *See* Pl. Mem. 33–37.

Contrary to the Commission's argument (at 38), Amazon did not seek to "diminish the Commission's remedial authority" by voluntarily issuing automatic, full refunds to all original purchasers of the Subject Products. The CPSA focuses on providing refunds to consumers; that is exactly what Amazon did here. Moreover, the Commission's refund authority remains subject to the limits prescribed by the CPSA and APA—both of which required the Commission to take Amazon's prior actions into account in determining the appropriate remedy under the CPSA. *See* 15 U.S.C. § 2064(d); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action violates the APA where agency "fail[s] to consider an important aspect of the problem"). Yet the Commission failed to do so.

In arguing that it "has *not* 'order[ed] duplicative refunds,'" Def. Mem. 38, the Commission proceeds as if an undisputed fact—that Amazon already issued full refunds, in the form of a credit, to every purchaser—has not been established.  But in the underlying adjudication, the Commission "concede[d] that Amazon has already given full refunds to all the affected customers."[12]  The Commission cannot ignore reality by belatedly asserting these refunds do not count.  That the Final Order is "a single order requiring a single refund," Def. Mem. 38, is beside the point; the refunds required by the Final Order constitute a second set of refunds for the same products.

The Commission fares no better in arguing that Amazon's refunds do not qualify merely because they were not issued in cash.  Def. Mem. 38–39.  That argument is not properly before the Court because the Commission did not advance it in the Final Order.  *See Chenery*, 318 U.S. at 87.  In any event, the CPSA does not obligate recalling firms to issue refunds in cash.  *See* 15 U.S.C. § 2064(d).  In fact, the word "cash" does not appear anywhere in the statute.  *See Id.* §§ 2051–2090.  The Commission has approved numerous recalls providing for refunds in store credit.[13]  That approach comports with the Commission's regulations, which recognize "rebates" and "coupons" as examples of remedies for a recall.  16 C.F.R. § 1115.27(n)(1).  The Commission's unexplained departure from that regulation and its past orders is itself arbitrary and capricious.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–15 (2009).

The Commission offers no "reasoned explanation" for its refusal to recognize Amazon's issuance of credits as bona fide refunds, as required by the APA.  *Dept. of Com. v. New York*,

---

[12] *See* AR400; AR10171, AR10178, AR10189-90, AR10201, AR10213, AR10223.

[13] *See, e.g.*, CPSC, Target Recalls Children's Pillowfort Weighted Blankets Due to Asphyxiation Hazard; Two Fatalities Reported (Dec. 22, 2022), https://perma.cc/6QZH-WKX2 (last visited Nov. 5, 2025); CPSC, Future Motion Recalls Onewheel Self-Balancing Electric Skateboards Due to Crash Hazard; Four Deaths Reported (Sept. 29, 2023), https://perma.cc/PDB7-9RV6 (last visited Nov. 5, 2025).

588 U.S. 752, 785 (2019). The Commission's treatment of Amazon's prior refunds as irrelevant merely because the agency order did not precipitate their issuance elevates form over substance (and consumer protection). Such a rule would disincentivize industry from acting swiftly, substantially delay relief for consumers, and undermine the Act's purpose. Instead of promptly issuing refunds to affected consumers, companies would need to wait for Commission proceedings to conclude in order to avoid having to provide duplicative refunds. Disincentivizing prompt restitution is inconsistent with the goal of a refund—to make the purchaser whole.

The Commission's complaint that consumers were "not adequately informed of the [products'] hazards" under "Amazon's voluntary credit program," Def. Mem. 39, muddles the purposes of recall notices and refunds under the Act. Agencies "are bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes." *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 230–31 & n.4 (1994). The Commission has not shown that *refunds*—as opposed to recall *notices*—must "inform[]" consumers of product hazards to be sufficient. As the administrative record shows, remedies provided under Section 15(d) of the CPSA—under which the Final Order's refund requirement was issued—are intended to make consumers whole. AR3978–79, 10913. That is exactly what Amazon accomplished through its voluntary refund of the full purchase price. By contrast, as the Commission's own guidance reflects, notices issued under Section 15(c) are intended to "help[] consumers . . . [u]nderstand the product's actual or potential hazards." 16 C.F.R. § 1115.23(b); *see also* 15 U.S.C. § 2064(i). At bottom, the Commission's arguments seek to blur the CPSA's notice and remedy mandates to support its demand for a duplicative refund.

**B.    The Commission Is Not Authorized to Impose Conditions on Refunds.**

The Final Order compounds the errors discussed above by requiring Amazon to impose conditions on the (unlawful) second round of refunds. Specifically, the Final Order directs

Amazon to refund only consumers who provide proof that they have destroyed the products. AR17724. That requirement exceeds the Commission's authority. *See* Pl. Mem. 35–37.

The Commission's primary defense—that Amazon's automatic refunds did not adequately incentivize consumers to destroy or return the Subject Products—is untethered from the CPSA and the factual record.[14] The CPSA does not authorize the Commission to condition refunds on proof of destruction. As Amazon has explained, Section 15 of the Act—unlike other sections, such as Section 17—does not mention such conditions. Pl. Mem. 36. The Commission dismisses this distinction between Sections 15 and 17 by invoking *Martin v. Hadix*, 527 U.S. 343 (1999). *See* Def. Mem. 40. However, the provisions at issue in *Hadix* involved wholly distinct subject matters. *See* 527 U.S. at 344 (addressing two statutory provisions that separately addressed the appropriate remedies in prison litigation and attorney's fees). By contrast, Sections 15 and 17 both address circumstances in which consumer products either fail to meet applicable safety rules or otherwise pose an imminent or substantial product hazard. *Compare* 15 U.S.C. § 2064, *with id.* § 2066 (prohibiting importation of any product that "fails to comply with an applicable consumer product safety rule," "is or has been determined to be an imminently hazardous consumer product," or "has a product defect which constitutes a substantial product hazard").

The Commission also ignores that Amazon expressly instructed all original purchasers to dispose of the Subject Products. As a former CPSC official explained, that approach constituted an "effective recall" because the instruction sought "remov[al]" of "[t]he hazard . . . from the stream of commerce." AR17234. The Commission provides no evidence to the contrary.

---

[14] The Commission's complaint that consumers were not adequately incentivized to *return* the Subject Products is inapposite; the Final Order did not require Amazon to condition refunds on product returns. AR17701.

While the CPSA provides that the Commission "shall specify . . . the persons to whom refunds must be made," 15 U.S.C. § 2064(d)(2), that provision does not serve as a backdoor for the Commission to mandate what such persons must do to obtain a remedy under Section 15(d). Rather, this provision simply recognizes the potential need for the Commission to specify whether, based on a product's likelihood for resale, persons beyond the original purchasers should receive refunds. Indeed, as the Act's legislative history shows, Congress intended for the Commission to "have authority to specify whether present owners or only first purchasers are entitled to [a] refund"—not to expand the Commission's remedial authority. AR10771. The Commission's continued reliance on Section 15(i)(2)(H), a clerical provision that lists content to be included in recall notices, remains unconvincing. This provision does not give the Commission a free pass to go beyond the scope of remedies authorized under Section 15(d)(1). Pl. Mem. 36–37.

## IV.    The Commission's Structure Is Unconstitutional.

### A.    Vacatur Is the Appropriate Remedy for the CPSA's Unconstitutional Removal Restrictions.

The parties agree that the statutory restriction on presidential removal of sitting Commissioners is unconstitutional. *See* Def. Mem. 41; Pl. Mem. 37–39. The Commission nonetheless asserts that "Amazon is not entitled to vacatur of the Final Order, because it has not shown harm from the removal protection." Def. Mem. 41 (citation omitted). That argument misapprehends the applicable law and overlooks the history of this proceeding.

First, the Commission incorrectly suggests that *Collins v. Yellen*, 141 S. Ct. 1761, 1788–89 (2021), identifies an exhaustive list of "scenarios where an unconstitutional removal provision could 'inflict compensable harm.'" Def. Mem. 41. *Collins* merely provided two "example[s]" of circumstances in which the harm was "clear[]." 141 S. Ct. at 1789. Indeed, *Collins* acknowledged that other situations may be "less clear-cut," including the fact pattern at issue in *Collins* itself. *Id.*

23

Amazon need not show that this suit involves facts neatly falling into the examples given in *Collins*. Rather, the test is whether there is "reason to believe that the unconstitutional removal provision itself inflicted harm," *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023), which can be met by showing "some nexus" or "connect[ion]" between the removal protections and harms suffered, *Bhatti v. Fed. Hous. Fin. Agency*, 97 F.4th 556, 561 (8th Cir. 2024).

Amazon has met that standard. Despite the Final Order's prescription of actions that are purportedly "necessary to protect the public," AR17675, the Commission stayed the Final Order shortly after the Department of Justice stated that Commissioners are removable at will, AR17791. The Commission's about-face regarding the urgency of implementing the Final Order suggests the Order may have come out differently, at least in part, if the Commissioners had known, before they issued the Order, that the President could remove them at will. This, in turn, provides reason to believe the removal provision harmed Amazon. *See Keene*, 86 F.4th at 149; Pl. Mem. 40–41.

### B. The Combination of Investigatory, Prosecutorial, and Judicial Functions in This Proceeding Violated Amazon's Due Process Rights.

The Commission ignores facts showing that the combination of functions exercised by the Commission and public prejudgment by former Acting Chairman Robert Adler resulted in an "intolerably high" risk of unfairness. *Withrow v. Larkin*, 421 U.S. 35, 58 (1975).

The Commission controlled every step of the administrative proceedings in this case. It directed staff to conduct "In-Depth Investigations" on third-party products sold on Amazon.com and voted to approve an administrative complaint based on those investigations. AR22–23, 18481. The Commission then ratified the appointment of the administrative law judges who conducted the adjudication. And most importantly, the Commission served as the final decisionmaker regarding the validity of the claims asserted in its own complaint. Given that framework, the outcome of this proceeding was effectively preordained from the outset.

24

The Commission's failure to administer the CPSA in a consistent fashion exacerbates that problem. Although the Commission has issued Product Safety Warnings regarding consumer goods that are similar to the Subject Products at issue here—and that present similar risks—the Commission departed from its Product Safety Warnings when it issued the Final Order. *See* AR17652–65. For example, the Commission insists on referring to death in the notices it has mandated for the Subject Products, despite not referring to death in warnings issued for similarly situated products—including products sold on Amazon.com. *See* AR17658, 17663, 17687–89.

Former Acting Chairman Adler's statements further underscore the conflict between the Commission's proceedings and "the requirement that administrative adjudicators be impartial." *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984). Despite the Commission's attempt to downplay the statements as "innocuous," Def. Mem. 44–45, Adler's characterization of the proceeding as "a huge step forward" toward Commission regulation of "massive third-party platforms" like Amazon shows that the Commissioners conducted these proceedings as policymakers rather than as a neutral, detached adjudicatory body. As a body that initiated the adjudication to achieve a clearly stated policy outcome, the CPSC could not decide this proceeding in a way that comports with the Constitution's due process protections. *See Bakalis v. Golembeski*, 35 F.3d 318, 326 (7th Cir. 1994).[15]

## CONCLUSION

For the foregoing reasons and for the reasons stated in Amazon's opening brief, the Court should grant Amazon's motion for summary judgment and deny the Commission's cross-motion.

---

[15] The Commission cites *Marshall v. Cuomo*, 192 F.3d 473 (4th Cir. 1999), but that case is distinguishable. There, the court rejected allegations that a government employee who had participated in a prior proceeding improperly influenced a hearing officer in a different proceeding. *Id.* at 484. Unlike here, where the Commissioners served multiple functions in the same proceeding, the employee in *Marshall* merely served as an advisor, did not have adjudicative authority, and did not hold investigative or prosecutorial functions in the relevant proceeding.

Respectfully submitted,


_/s/ Kevin F. King_
Sarah L. Wilson*
Stephen P. Anthony (D. Md. Bar No. 14854)
Kevin F. King (D. Md. Bar No. 29548)
Thomas R. Brugato*
Matthew J. Glover*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: 202-662-5488
Fax: 202-778-5488
swilson@cov.com
santhony@cov.com
kking@cov.com
tbrugato@cov.com
mglover@cov.com

Jamie Dominique U. Magcale*
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001-2170
Tel.: 212-841-1243
Fax: 646-441-9243
jmagcale@cov.com

_Attorneys for Plaintiff_

* Admitted _pro hac vice_

November 5, 2025